162283, whenever you are ready. So let me begin, Your Honor, with the rejection over Steigerwald and Pressman, which was initially adopted by the Examiner and then withdrawn and affirmed by the Court. The issue, of course, is whether you can use switching regulators in Pressman's circuit. The Board found three facts that I think are significant. First on Appendix Page 22 of the decision, finding specifically that Steigerwald 090 has, quote, unpulsed biasing and control loads. The second, being on Appendix Page 21, that the appellant relies on the testimony of Dr. Steigerwald, that one of ordinary skill in the art, would have understood that non-pulsed voltages in Steigerwald 090 can be implemented with or without inductors in the current path. It's, of course, a characterization of our argument, but it's significant given the arguments that SynQor is making. And the third relevant finding being on Appendix Page 22, we are not persuaded under the specific facts of this case that it is erroneous for the Examiner to have concluded that Steigerwald 539 itself teaches away from the intentional inclusion of inductance in the current path of pulsed loads. So the Board agrees that there are unpulsed loads. The Board agrees that Vicor argued that those unpulsed loads are suitable for using switching regulators even though they may have inductance, but the fact that the pulsed loads may not be suitable for that caused the Board to decide against the rejection, as it were. Can I just ask you a housekeeping question? This is how this Board decision relates to the other Board decision that's coming in about 45 minutes from now. And there was a Steigerwald-Pressman combination over there, too, where the Board found there would be a motivation to add switching regulators on the pulsed load. Do you happen to know if the records are the same, essentially the same, or was there some distinction that might have driven the Board in that case to conclude that there'd be a motivation to add a switching regulator, whereas the Board found here in this particular re-exam that there wasn't a motivation to add a switching regulator to Steigerwald 090-539? There are minor differences in the record, Your Honor, but I think it is difficult to escape the conclusion that those are just inconsistent. Okay. The Board really only put forward two reasons for reaching this conclusion, given the facts that it found. One was that what it calls the unpulsed voltages were not the primary embodiments, that, in fact, it was the pulsed voltage output that was the primary embodiment. And this, we think, is simply an error of law. We cited the Emory-Mills case for that because it's very specific on that point, but the more general point, of course, is that the prior art is available for all that it teaches. Syncort didn't cite any contrary case law that would suggest if you get to a certain threshold of importance of a teaching, it overshadows everything else in the reference. The second was the Board's finding that Dr. Steigerwald had testified that the non-pulsed outputs could be affected by the pulses. Now, the Board never goes from there to the intermediate conclusion, which I would have expected based on its reasoning, which is that that effect is, in fact, desirable. Okay. It sounds like, from the way they're talking about his testimony from his testimony to begin with, that that effect is undesirable. These are not pulsed outputs as the Board has expressly found. They can be affected by pulses, but do you want that or not? And that's important because Syncort's argument about the inductor is it tends to resist the pulses. In other words, if there is an inductor in the output, and there is a load that demands a pulse of energy, the inductor will tend to resist that. So maybe the pulse isn't as fast as it would otherwise be. But if the pulse is disadvantageously affecting the bias outputs, the non-pulsed outputs, then it seems like an inductor would be a good idea. But the Board never draws any of these conclusions for itself. In the grand scheme of things, I think, in view of Dr. Steigerwald's testimony, it doesn't make a difference because Dr. Steigerwald directly testified that there was not a problem putting switching regulators on the biased outputs. He says in general in his testimony. And if you still had a system in which V1 remained pulsed and V2 through N were the non-pulsed, you would then, in that view, have switching regulators V2 and down, but a linear regulator on V1. That's correct. And there are other things you can do to make an inductor and a switching regulator work. The idea is that if the load of the machine there is drawing a lot of current suddenly, it might not get it fast enough because of the inductor. You could put a capacitor, for example, at the output that would supply that extra current. But you have to do something there. Or determine that the inductance is too small to really bother the pulse. But the upshot is, for the biased voltages, as Dr. Steigerwald testified, it's perfectly fine to put switching regulators at those outputs. It's not going to interfere with the intended purpose. And your basic point on this is the board just never really addressed that scenario of not having all of the regulators be the same. Yes, I think that is correct. There's sort of two basic points. I'll restate it in my own words, but in general it's parallel to what you just said. The first is that I think the board took from the fact that the word pulsed is used a lot in the beginning of the Steigerwald 090 patent. That that was the primary teaching and it could ignore the other outputs. And I don't think that's correct as a matter of law. The second part where we think the board went wrong is to focus on Dr. Steigerwald's, I think, highly ambiguous testimony that switching regulators or an inductor on the biased outputs could affect those outputs and ignore his much more direct testimony that there wasn't a problem putting switching regulators on those outputs. So those are the two places we think the board went wrong in terms of that rejection. Was there testimony, I don't remember, is this a case in which Dr. Schlecht testified also? Yes, Dr. Schlecht did. Was there testimony to the effect that because the pulsed aspects of Steigerwald were so dominant, so much the theme of the contribution in Steigerwald, that one just wouldn't have had a motivation to look at the other things actually shown in Steigerwald? I think the way you have phrased it exactly, no. Not the motivation to ignore. It was a highly inexact phrase. But I think that's the general thrust of the argument, that the pulsing is so important you don't have to look at anything else. And I think that that is wrong as a matter of law. Maybe another way of putting it is the pulsed load is such overwhelmingly the main event and everything else, the bias voltage lines are so minor and subsidiary, it just wouldn't make any sense to have a different type of regulator placed on those very, very subsidiary bias voltage lines. That may be another way to put it, Judge Chen. As we pointed out though, especially in the Steigerwald 090 patent, those bias voltages, the non-pulsed voltages, are in fact the main event. And they are in fact the main event because Steigerwald 539, which was the predecessor patent that gets incorporated by reference, is dealing with how you make a converter that serves a load that is demanding these current pulses. Steigerwald 090 takes that, reverses the order, and adds a bunch of bias outputs. That is the point of Steigerwald 090. It's directed to radar applications in the specific embodiment, certainly, and one of those has a pulsed load. But the point of that patent was to add the other output voltages in the system, which you didn't get from the earlier Steigerwald 539 patent. So even on a factual level, I don't think it's proper to say that the thrust was so pulse-focused in Steigerwald 090 that it would rise to the level where you could find an exception to the general rule that the prior art is there for all that it teaches. Let me move on to the second rejection, which is Cobos, Steigerwald, and Pressman. And here there were two findings made by the board. The first is the idea that synchronous rectification was not within ordinary skill. I think this is pretty well laid out in the briefs. Essentially, we contend there is testimony from Dr. Schlecht saying that synchronous rectification— Just curious, housekeeping question again. For this particular category of rejections, it's essentially identical to the one we were just talking about, right, except that we're replacing the 539 with Cobos? Am I getting it right? Are we talking about the rejection from the 2282 appeal with Cobos, Pressman? I'm sorry. I'm talking about this appeal, 2283. We were just talking about Steigerwald 090, Steigerwald 539, plus Pressman. I see. Now we're talking about Steigerwald 090 plus Cobos plus Pressman. Grounds one and two. Correct. So it is similar. Grounds five and six are simpler. Right. Now the synchronous rectification portion of it, the front part of the portion of it, is coming from Cobos. Right. I'm just trying to figure out if this category of rejections is essentially redundant, given what our court said in 2015 about how Steigerwald 090 teaches synchronous rectification. I think if you find that switching regulators can be used on those biased outputs in Steigerwald 090, it is redundant as a matter of fact. It will have exactly the same effect. You want to make a brief comment on your third issue? You're onto your rebuttal time. Your Honor, I think a brief comment probably doesn't justify it. Unfortunately, I'll wait for rebuttal time if it's okay. Thank you. Mr. Ryan. We'll be sure to ask the other side about it, so you can wait. May it please the Court. On appeal, Vicor has abandoned its argument that one of scale would substitute switching regulators for all the linear regulators in Steigerwald. Vicor essentially concedes that one of scale would not use switching regulators to power the pulse loads. Can I just ask you my housekeeping question that I asked Mr. Smith about this appeal, this rejection of Steigerwald 090-539 in view of Pressman, and the mirror proposed grant which the board affirmed for the next appeal that's coming? I think your Honor's observation is correct. The record is essentially the same? Yes. The arguments are essentially the same? The only thing that's not the same is the board's outcome on the motivation to combine the references. Well, the only difference, I mean, first of all, both references turn on Steigerwald and taking switching regulators from Pressman and injecting them. So those issues are exactly the same. The additional issue that's raised by the second set of rejections or proposed rejections is that they use Cabo's synchronous rectifications. No, but I'm sorry. I'm talking about the next appeal that I assume you're going to be standing up here for in about 40 minutes. Yes. The answer to that is that the result here is correct based on the record before it. The result there is incorrect, but the rationale that the board used in that other appeal was different than the rationale here. And therefore, you can't reconcile the results, but you can say that the rationales weren't inconsistent because they were entirely different, which I'll explain when we get to the next appeal. So here on the Steigerwald-based rejections, the key is for them to get the switching regulators to substitute in for the linear regulators. And they've abandoned that argument for the pulse loads. They say that the substitution would only be made here for the non-pulsed loads. And if they're right about that, that's enough? If they're right about that, that would be enough. However, they're not right about that. And the board actually did address that issue, so did the examiner, and found that one of skill would not substitute switching regulators for the non-pulsed loads. Where did the board say that? The board did say that. So first of all, I should say that the examiner— Where did the board say that? So the board adopted the examiner's rationale, as you may recall. And the examiner did say that because the examiner— Can you just point me to something in the board's opinion that allows you to run back to the examiner's answer? Sure. Appendix 021-22 is one place that you can look. I'm sorry, appendix what? 021-22? In the board? I thought we were starting with the board opinion. Okay. That should have very, very low numbers. Okay. If we start with the board opinion, which is appendix 022. Yeah. The board noted—first of all, the board noted Vicor's argument about putting in switching regulators in front of the non-pulsed loads. It completely understood the issue. And then it went on and said that, among other things, the bias loads do not necessarily stay constant and could be affected by the pulses. That is one thing that the board said. And as a consequence, the bias loads, just like the pulse loads, could require relatively quick bursts of power, which is not achievable with an inductor in the conduction path. So that is the fact that they are effective. I'm a little lost. What's the sentence you want me to read from the board's opinion? So if you start on 021, you'll see that the board notes that the argument about non-pulsed voltages. The appellant relies upon the testimony of Dr. Steigerwald that one of ordinary skill in the art would have understood that non-pulsed voltages in Steigerwald can be implemented with or without inductors. And the board recognizes that Syncord disagrees, observing that including inductors in the current path would frustrate the principal purpose of Steigerwald. Pat Mohner also challenges Dr. Steigerwald's memory and lack of experience. And then it goes on and says, on balance, there are facts supporting each viewpoint. It's a close call, but we find the requester has not pointed to reversible error in the examiner's determination regarding this issue. And it also then goes on to say, it is evident that Steigerwald's 090 is principally directed to pulse loads. And we'll talk about the implication of that. It's very important, even though it has unpulsed biasing and control loads. And then it also says, however, the principal descriptions and teaching of energy delivery of Steigerwald is that of a pulse power converter and the ability to miniaturize the equipment. Then going on to the next paragraph, it talks about how the bias loads do not necessarily stay constant. It notes that as being an attribute of these bias loads. And then it says, accordingly, on the present record in this proceeding, we are not persuaded that the examiner erred in withdrawing this rejection for the reasons noted in the RAM. And in the RAM, the examiner noted the reasons that the board in the Murata case noted. And in that decision, it specifically addressed the bias load issue. So this issue was considered by this board. It was also considered by the examiner. Now, as I said, why is it that it matters that the bias loads can vary? Well, because you need to be able to—what an inductor does is it slows down the ability to deliver power when it's needed quickly. And to the extent that these bias loads are affected, and they too could require—they don't necessarily have to, but they could require a very prompt burst of power. And that's what an inductor interferes with. And that, therefore, would discourage one of skill from putting a switching regular in front of these bias loads. The second point, the board recognized the important—how this— The bias loads are unpulsed, though. We all agree with that, right? But they also vary. They are not constant. And so, as a consequence, they have a pulse-like—they could have a pulse-like quality in the fact that they vary, and they could vary in accordance with, although perhaps not as sharply as the bias loads. And so, as a consequence, you have to deliver power to those unpulsed loads or those bias loads when it is needed. And that's the important thing that an inductor interferes with. And that would discourage the combination. The other point, as Judge Chen pointed out, this—as the board found, this reference is—the Steigerwald reference is teaching pulse loads. The whole point of the application is to deliver pulse loads for a radar array while miniaturizing the equipment that needs to go into the array. Twin purposes. Deliver those pulse loads and make it small. And what—and Vicor has argued that the reason for putting in switching regulators in front of these bias loads is to add efficiency. But Vicor hasn't even attempted to quantify what the efficiency gain would be when these bias loads put out, as the board found, de minimis power. So what would be the incentive to try to improve efficiency when the load is putting out de minimis power? On top of that, what Pressman actually teaches is that at frequencies of 20 kilohertz— What you just said about the insufficient motivation to gain efficiency, I don't remember any sentences that you were reading from the board that adopted that, did they? I think that's implicit in the board's finding that the reference is directed at the delivery of pulsed power, the general description and teaching of energy delivery, and— Well, I guess it's a little hard to know what those sentences are. I mean, one interpretation of those sentences is what Mr. Smith says is the simple legal error that you look at the prior art for the main theme but not for the rest of what it teaches. I don't think that's a fair conclusion here. I think we're talking about a reference that the board found is virtually 100 percent of the power is coming from these pulsed loads. And so they noted that. They noted that this is—that the power comes from the pulsed loads, and there's de minimis power coming from these biased loads. That's what the board is noting here. And it's not just the board, as I said, in this opinion. The board is also adopting the conclusions that the examiner reached. And here's what the examiner said, noting—referencing what the Murata board said. What are you about—what page are you about to read? Appendix 3400, which is from the Murata board decision, that is incorporated by the examiner in his decision multiple times, both in the right of appeal notice and in the action closing prosecution. And that would be Appendix 418 and Appendix 438. There, the Murata board said that requester notes that not all the output voltages of Steigerwald are pulsed voltages. Patent owner maintains that the outputs that are not pulsed are biased voltages that do not draw substantial power. And then the board went on and agreed with that. That was the examiner's conclusion, as adopted by the board here, that these biased loads do not draw substantial power. And so I think it's implicit that the board here was saying that when you've got loads that are responsible for de minimis power, that would discourage anybody from adding switching regulators that, based on the purported justification that they add efficiency, when any efficiency gain for the entire system would be negligible or de minimis. The other important point is that switching regulators are indisputably larger. They have more components. And the board in its decision here also emphasized the importance in Steigerwald of miniaturizing the equipment needed for energy storage. So what VICOR is proposing would not increase efficiency in any material way. And it indisputably would increase the size, which is also contrary to the goal of miniaturizing the equipment. And that's a goal that the board noted. And lastly, Pressman doesn't say that switching regulators are always going to improve efficiency. Pressman also says it depends on the frequency level. And Pressman teaches that at the frequency levels that are at play at Steigerwald, there would be no efficiency gain. And that was all evidence that was before the board and before the examiners. The board found that one of skill would have no incentive to add switching regulators in front of any of the loads. And by the way, Steigerwald said that himself in his patent claims and during prosecution. Steigerwald, in both the claims and the prosecution, emphasized that there should be no switching regulators at all. He didn't just say in front of the pulse outputs. He said no switching regulators at all. And so what VICOR is arguing here is respectfully the epitome of hindsight. It's looking at the prior art of the claims as a template. And they are suggesting modifications that one of skill would not make. There'd be no incentive to add switching regulators for bias loads that put out de minimis power. There'd be certainly a disincentive to add something that's larger when the reference teaches to keep everything small. And as I say, the frequency in Steigerwald would result in there being no efficiency gain anyway. And I think it also brings you back to the secondary consideration evidence. And the board found in this case that there were secondary considerations that are significant and a nexus to these specific claims. How can there be a nexus in light of what this court said in 2015, which said the basic IBA structure was known in the prior art? And so, therefore, that can't really be a basis for establishing a nexus between any claim and any alleged commercial success, copying, praise, et cetera. Well, there is a nexus. And, of course, this court remanded back to the. Right. But the import to me is clear that the two-stage architecture of a non-regulating isolation stage coupled with a non-regulating isolation stage with controlled rectifiers, synchronous rectifiers, that basic architecture was in the prior art. It was known. It was known through the Steigerwald references. So now you're left, as the patent owner, with needing to establish a nexus to something else. Let me address that. First of all, what was known in Steigerwald was a two-stage architecture, as you mentioned, that has a non-regulating isolation stage. And as this court found, it has synchronous rectification, but feeding linear regulators, not switching regulators. What these claims have are numerous features that are not present in those claims that this court found were anticipated. Isn't this the board decision that relied on the Murata board decision, which was based on the 190 patent, which this court found multiple claims anticipated in 2015? So there's a problem now with the connection that your side has made between this patent claims and the 190 patent claims when a number of the 190 patent claims have been found to be anticipated. Your Honor, respectfully, I don't think there's a problem at all. I think Vicor has suggested there's a problem based on, I think, crop quotes. The analysis, first of all, the trial claims of the 190, none of those claims were found to be anticipated by this court. The trial claims included claim two of the 190 patent that the board found here closely maps to the 290 claims at issue. Those claims include switching regulators. There are also claims that include other elements such as the voltage levels that are at issue here that tie the claims very closely to the types of systems that were commercially successful and that distinguish the Steigerwald system. But the switching regulator point alone is quite important because Steigerwald does not have switching regulators. And yes, because there was a claim out there that did not call for switching regulators, there was anticipation. But there are lots of claims, including these, that require switching regulators and other elements that are absent from Steigerwald. The issue for nexus is, as the court held in- Please finish your thought, Mr. Ryan. Yes, and we'll probably get to this in the O21. The issue of nexus is whether there is a close link, reasonably commensurate link, between the claims on the one hand and the commercially successful products and other secondary consideration evidence. The board looked at that very specific question, and it found that there is a link in this case, not to the anticipated claims, but to the claims in this patent. And that was a factual finding that was correct. FICOR had the obligation in this proceeding- We'll hear some rebuttal from Mr. Smith. You've got three and a half minutes. Allow me to address a background point on switching regulators and the assertion that using them is the epitome of hindsight. This is a citation from Pressman Appendix, page 762. It's right in the preface. He says, switching regulators, which are in the process of revolutionizing the power supply industry because of their low internal losses, small size, weight, and costs, competitive with conventional series paths for linear power supplies, are covered fully. So this is, in the background, a component which is well known to people of ordinary skill. And Pressman was what, 1977? 1977. So 40 years ago, switching regulators were in the process of revolutionizing the power supply industry to assert that a person of ordinary skill in the art wouldn't know that those two things which are mentioned in this paragraph together, hand in hand- But it competes with Dr. Steigerwald's expressed statements in the claims that they don't want any inductors in the conduction path. I interpret that, Your Honor, as a way to distinguish over prior art. In other words, there is a patent that Dr. Steigerwald is trying to get. There's prior art that does use switching regulators. And Dr. Steigerwald is amending the claims to get around that prior art. But that doesn't impede the person of ordinary skill in the arts. It doesn't take away the knowledge of switching regulators or the ability to use them. And Dr. Steigerwald himself testified, as we covered before, directly that switching regulators could have been used. There's motivation to- On the biased voltage line. Yes, on the biased voltage lines. And there's motivation to do it because of what Preston says in connection with figure 3.4B on appendix K- What is the evidence on this question that there's actually some reason not to use inductors on the biased lines? I believe- Right. So that specific argument, I don't think Syncor made in the briefs. The specific connection to the examiner's right of appeal notice, back to the Murata decision, where the board in the Murata decision made a comment on the power coming out of the bias. Well, I don't think that was made in the briefs. I'm certain the board didn't make a finding about the power level coming off the biased voltages. I don't think that's in there at all. So all of that was certainly new. The evidence is Dr. Steigerwald's declaration testimony about inductors. And to the extent one can infer anything about that from the claim language of one of the Steigerwald references, that would also play into the evidence. And the evidence on the other side, of course, is what Preston says about switching regulators in connection with figure 3.4B, that you can use them with DC voltage outputs, which is essentially what we have here for Steigerwald. That doing so can allow you to have multiple outputs with high efficiency. The quote I just read to you and Dr. Steigerwald's testimony on that point. Secondary considerations? Yes. In terms of the secondary considerations argument, thank you, Judge Chen. I think the point that the board got wrong was the lack of any discussion in the context of the prior art. And there's a lot of evidence that would come to bear on that point if the board had properly evaluated Nexus. There's all of the prior art teaching the core concept of having two separate stages followed by multiple outputs. That certainly impressed them, as this court found. It is in the Steigerwald reference. Even this separation of stages is found in the Cobos reference, as Syncor pointed out in its brief on the prior case. It's found in Jovanovich. It's really all over the prior art, this division of the claims into stages that we find in the Schlecht patents. And to the extent Syncor has ever characterized the secondary considerations as deriving from a feature, it was this separation of stages. If you read the first few pages of their brief, this radical idea that you can have two different stages of down conversion. But it's found in Preston. It's found in Steigerwald. That's the key feature that Syncor has always advocated to the extent they advocated anything at all. And so your point is what the board didn't do was to filter that out and see if there was anything left. That's correct. They did it correctly in the next case, but not in this case, Your Honor. Thank you. Mr. Smith, this case is submitted.